UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DSU AVIATION, LLC, a Washington Limited Liability Company, and DAVID AND NAYDA UTTERBERG, as individuals and on behalf of their marital community,<br><br>      Plaintiffs,<br><br>   v.<br><br>PCMT AVIATION, LLC, a California Limited Liability Company, n/k/a XOJET, Inc., a California Corporation, PAUL TOUW, an individual, and WILL LANGMANN, an individual,<br><br>      Defendants/<br>      Counterclaim<br>      Plaintiffs,<br><br>   v.<br><br>DSU AVIATION, LLC, a Washington Limited Liability Company, and DAVID AND NAYDA UTTERBERG, as individuals and on behalf of their marital community,<br><br>      Counterclaim<br>      Defendants. | Case No. 07-1478 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss ("Motion"). See Docket No. 23. Plaintiffs filed an Opposition and Defendants submitted a Reply. See Docket Nos. 32,

38. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

## II. BACKGROUND[1]

Plaintiff/Counter-Defendant DSU Aviation, LLC ("Plaintiff" or "DSU"), is a Washington limited liability company owned by DSU Medical Corporation, a Nevada corporation. Plaintiffs/Counter-Defendants David and Nayda Utterberg ("Plaintiffs" or "Utterbergs") are married and David is the founder and President of DSU Medical Corporation.

Defendant XOJet, Inc. ("Defendant" or "XOJet"), is a Delaware corporation that provides airplane management, maintenance and charter services. XOJet is the successor-in-interest to PCMT Aviation, LLC. Defendant Paul Touw is the founder, President, and Chief Executive Officer of XOJet. Defendant Will Langmann is an employee of XOJet.

In June 2005, Mr. Utterberg, through his company DSU Aviation, purchased a jet and hired XOJet to manage it. The agreement between Mr. Utterberg and XOJet was memorialized in a Memorandum of Understanding ("MoU") executed by Plaintiffs on July 7, 2005, and Defendants on August 15, 2005. Pursuant to the MoU, XOJet agreed to provide certain management services in relation to the jet, including providing pilots, mechanics, maintenance, insurance and chartering the jet to third parties when it was not

---

[1] Unless otherwise noted, the background facts are taken from the parties' Joint Case Management Statement and from the Order issued by the district court in Washington transferring the case to this Court. See Docket Nos. 15, 1.

2

being used by Plaintiffs. Second Am. Compl. ¶¶ 14-30. In exchange, Plaintiffs agreed to pay Defendants $67,700 per month plus an initial deposit of $150,000. Opp'n at 3.

XOJet managed the plane from July 1, 2005, until February 3, 2006. In late 2005 and early 2006 Plaintiffs withheld certain payments pending resolution of several accounting issues that had arisen between Plaintiffs and Defendants. The parties discussed these issues on February 2, 2006, but were unable to resolve the issues at that time. On February 3, 2006, XOJet terminated its management of the jet effective immediately and stopped paying the insurance and other costs associated with the jet. Plaintiffs assert that this cancellation was improper and forced them to cancel a business trip to Asia scheduled for February 3, 2006. Defendants claim that Plaintiffs breached the agreement by failing to make the required payments. Plaintiffs filed the present action on June 28, 2006, amended the Complaint for the first time on November 21, 2006, and filed a Second Amended Complaint on August 6, 2007. See Docket No. 22.

## III. DISCUSSION

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). "All factual allegations are to be taken as true and construed in the light most favorable to the non-moving party." Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th

3

Cir. 1991)  Dismissal "is proper only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (internal citations and quotations omitted).

### B. Analysis

As a preliminary matter, the Court addresses the issue of which state's substantive law applies to Plaintiffs' claims. Plaintiffs filed their initial Complaint in the Western District of Washington.  The federal district court had diversity jurisdiction under 28 U.S.C. § 1332.  The case was then transferred to this Court pursuant to 28 U.S.C. § 1404.  The Court must therefore decide whether Washington or California law applies.  If the MoU contains a choice of law provision, neither party has relied on it nor brought it to the Court's attention. In their moving papers both parties have assumed that California law applies.  The Court thus finds that California law governs Plaintiffs' claims and Defendants' counterclaims.

In their Second Amended Complaint Plaintiffs presented eight causes of action.  Defendants have moved to dismiss all of them. The Court addresses each in turn.[2]

#### 1. Unjust Enrichment (Eighth Cause of Action)

Defendants assert that Plaintiffs' unjust enrichment claim should be dismissed because unjust enrichment is neither a cause of action nor a remedy.  Mot. at 6.  California courts have indicated that unjust enrichment "is not a cause of action . . .,

---

[2] The Court addresses the causes of action in the same order presented in Defendants' Motion.

4

or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." McBride v. Boughton, 123 Cal. App. 4th 379, 387 (Ct. App. 2004). As another court in this district has stated, however, "courts finding that California does not allow an 'unjust enrichment' cause of action have made essentially semantic arguments--focusing on the interrelationship between the legal doctrine of unjust enrichment and the legal remedy of restitution." Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1100 (N.D. Cal. April 4, 2006). Such reasoning is persuasive and the Court understands Plaintiffs' unjust enrichment cause of action to be a claim for restitution. See id. (stating that "[a]lthough their Eighth cause of action is entitled 'unjust enrichment' it is clear that plaintiffs are seeking restitution").

Defendants also argue that this cause of action should be dismissed because California law does not allow recovery of unjust enrichment when a party pleads breach of an enforceable contract, which Plaintiffs have in their first cause of action. Mot. at 6. Plaintiffs counter that their unjust enrichment claim is properly pleaded as an alternative to their claim for breach of contract. Opp'n at 5.

Under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996). In the present case, it is far from clear that an enforceable, binding agreement exists. Indeed, Defendants themselves argue that the MoU terminated 14 days after its

5

1  execution and subsequently had "no legal effect."  Mot. at 14.

2  Because the Court understands Plaintiffs' claim for unjust enrichment to be a claim for restitution pled in the alternative to their breach of contract claim, Defendants' Motion to Dismiss this cause of action is DENIED.

### 2. Breach of the Covenant of Good Faith and Fair Dealing (Second Cause of Action)

Defendants argue that this cause of action should be dismissed because it is superfluous to Plaintiffs' claim for breach of contract.  "Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement."  Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393 (Ct. App. 1990) (internal quotation marks omitted).  Thus, "the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose."  Id. (internal quotation marks omitted).  While a breach in the covenant of good faith "will always result in a breach of the contract, . . . a breach of a consensual (i.e., an express or implied-in-fact) contract term will not necessarily constitute a breach of the covenant."  Id. at 1393-94.  Accordingly, allegations which assert a cause of action for breach of the covenant of good faith must show the following:

> [T]hat the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common

6

>           purposes and disappoints the reasonable
>           expectations of the other party[,]
>           thereby depriving that party of the
>           benefits of the agreement. Just what
>           conduct will meet these criteria must be
>           determined on a case by case basis and
>           will depend on the contractual purposes
>           and reasonably justified expectations of
>           the parties. If the allegations do not
>           go beyond the statement of a mere
>           contract breach and, relying on the same
>           alleged acts, simply seek the same
>           damages or other relief already claimed
>           in a companion contract cause of action,
>           they may be disregarded as superfluous as
>           no additional claim is actually stated.

Id. at 1395.

In the present case, the Court can make no meaningful distinction between Plaintiffs' breach of contract cause of action and their breach of the covenant of good faith cause of action. To the contrary, the factual allegations in each cause of action are identical. Nonetheless, Plaintiffs' Second Amended Complaint contains allegations that Defendants' "refusal to discharge contractual responsibilities . . . [was] conscious and deliberate."[3]  Id.  The Court therefore finds that Plaintiffs have stated a claim for breach of the covenant of good faith and Defendants' Motion to Dismiss this cause of action is DENIED.

### 3. Conversion (Fifth Cause of Action)

Defendants argue that Plaintiffs have failed to allege an interference with ownership rights as required for a claim for conversion.

---

[3] For example, Plaintiffs assert that "XOJet falsely represented its intention to hire permanent Seattle-based pilots." Second Am. Compl. ¶ 30. In addition, Plaintiffs allege that Defendants "fraudulently mark[ed] up the costs of outside services." Id. ¶ 35.

7

> Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.

Farmers Ins. Exch. v. Zerin, 53 Cal. App. 4th 445, 451-52 (Ct. App. 1997).

Plaintiffs' conversion claim is based on the allegation that "Defendants converted Plaintiffs' money to their own use by fraudulently marking up the costs of parts" for the jet. Opp'n at 8. "Money cannot be the subject of an action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." Farmers, 53 Cal. App. 4th at 451-52.

In the present case, Plaintiffs' allegation that they were overcharged by Defendants for various jet parts falls short of a claim for conversion. See, e.g., McKell v. Wash. Mutual, Inc., 142 Ca. App. 4th 1457, 1492 (Ct. App. 2006) (stating "Plaintiffs cite no authority for the proposition that a cause of action for conversion may be based on an overcharge. Consequently, they have failed to demonstrate that they have stated a cause of action for conversion."). Defendants' Motion to Dismiss this cause of action is GRANTED without leave to amend.

### 4. Violation of California Business and Professional Code Section 17200 (Seventh Cause of Action)

Defendants argue that Plaintiffs' section 17200 claim should be dismissed because section 17200 was not intended to be used in

1  private litigation between two parties and because Plaintiffs have
2  not alleged any deception to the members of the public.
3  Plaintiffs allege that "members of the public would likely be
4  deceived by Defendants' practices and that members of the public,
5  i.e. [Plaintiffs], were in fact deceived by Defendants'
6  practices."  Opp'n at 9 (emphasis removed).

7  "California's unfair competition statute prohibits any unfair
8  competition, which means 'any unlawful, unfair or fraudulent
9  business act or practice.'"  In re Pomona Valley Med. Group, 476
10 F.3d 665, 674 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code §§
11 17200, et seq.).  "This tripartite test is disjunctive and the
12 plaintiff need only allege one of the three theories to properly
13 plead a claim under section 17200."  Med. Instrument Dev. Lab. v.
14 Alcon Lab., CV 05-1138, 2005 WL 1926673, at * 5(N.D. Cal. Aug. 10,
15 2005).  Plaintiffs in the present action have alleged all three
16 theories.  See Second Am. Compl. ¶ 84.

17 Under the fraudulent theory of section 17200, courts have
18 held that it is necessary to "show deception to some members of
19 the public interest," Watson Labs., Inc. v. Rhone-Poulenc Rorer,
20 Inc., F. Supp. 2d 1099, 1121 (C.D. Cal. 2001), or allege that
21 "members of the public are likely to be deceived . . . ."  Med.
22 Instrument Labs. v. Alcon Labs., CV 05-1138, 2005 WL 1926673, at
23 *5 (N.D. Cal. 2005) (internal quotation marks omitted).

24 Plaintiffs have failed to include any factual allegations to
25 support their claim that members of the public other than
26 themselves may have been deceived by Defendants.  "Although a
27 plaintiff's allegations are generally taken as true, the court

28

9

need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim." Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 794 (9th Cir. 2007).

This does not end the analysis, however. As the court in Medical Instrument Laboratories indicated, if a plaintiff is a member of the public or a consumer, rather than a direct competitor, he or she may be entitled to "protection under the fraudulent business practices theory of section 17200." 2005 WL 1926673, at *5. See also Watson, F. Supp. 2d at 1120 (stating that plaintiff was "not entitled to the protection of this [the fraudulent] prong of § 17200 because [he] is not a member of the public or a consumer entitled to such protection").

At this stage it is unclear whether Plaintiffs are consumers.[4] Given that this issue has arisen on a motion to dismiss and neither party has briefed the issue of Plaintiffs' status as consumers/non-consumers, the Court DENIES the Motion to Dismiss the fraudulent business practice claim.

Plaintiffs also allege unlawful business practices and unfair business practices under § 17200. See Second Am. Compl. ¶ 84. Under the unfair theory of § 17200, 'unfair' "means conduct that threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise

---

[4] For example, it would not be unreasonable to view Plaintiffs' status as that of consumers purchasing certain services from Defendants.

10

significantly threatens or harms competition." <u>Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187 (Ct. App. 1999).  Under the unlawful theory, plaintiffs must allege "practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made."  <u>Saunders v. Sup. Ct.</u>, 27 Cal. App. 4th 832, (Ct. App. 1994).

Defendants do not address either of these theories in their Motion.[5]  Defendants instead focus on the prong relating to harm to the public.  This prong, however, is applicable only to the fraudulent business theory of § 17200.  Therefore, Defendants' Motion to Dismiss this cause of action under all three theories of § 17200 is DENIED.

**5.   Breach of Fiduciary Duty (Sixth Cause of Action)**

Defendants argue that Plaintiffs and XOJet entered into an arms-length transaction, not a fiduciary relationship, and therefore this cause of action should be dismissed.  Plaintiffs argue that XOJet was in fact DSU's agent and therefore owed DSU a fiduciary duty.  Second Am. Compl. ¶ 80.

"California courts define an agent as 'anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an

---

[5] Whether Plaintiffs allege sufficient facts for these two theories is less than clear.  Nonetheless, while a district court may sua sponte dismiss a cause of action for failure to state a claim, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 679 (9th Cir. 2001), the Court declines to do so, agreeing that "[s]ua sponte dismissals are strong medicine, and should be dispensed sparingly." <u>Gonzalez-Gonzalez v. United States</u>, 257 F.3d 31, 33 (1st Cir. 2001).

11

1 account of such transactions.'" In re Coupon Clearing Serv.,
2 Inc., 113 F.3d 1091, 1099 (9th Cir. 1997) (citing Violette v.
3 Shoup, 16 Cal. App. 4th 611, 620 (Ct. App. 1993)).  "One of the
4 chief characteristics of an agency relationship is the 'authority
5 to act for and in the place of the principal for the purpose of
6 bringing him or her into legal relations with third parties.'"
7 Id. (citing Violette, 16 Cal. App. 4th at 620)).

> The other important aspect in determining the existence of an agency relationship is the degree of control exercised by the principal over the activities of the agent.  The right to control, rather than its exercise, is sufficient to meet this standard. . . .  If control may be exercised only as to the result of the work and not the means by which it is accomplished, however, an independent contractor relationship exists.

14 Id. (internal citations omitted).

15 Plaintiffs have alleged facts sufficient "to support a
16 cognizable claim" for breach of a fiduciary duty premised on a
17 principal/agent relationship.  Perfect 10, 494 F.3d at 794.  For
18 example, Plaintiffs have alleged that Defendants were responsible
19 for securing insurance for the jet and that Defendants had
20 permission to enter into legal agreements with third parties to
21 charter the jet when it was not being used by Plaintiffs.  Such
22 allegations demonstrate Plaintiffs' relinquishment to Defendants
23 of the "authority to transact . . . or manage some affair."
24 Coupon, 113 F.3d at 1099.  Accordingly, Defendants' Motion to
25 Dismiss this cause of action is DENIED.

### 6. Fraud (Third Cause of Action)

27 Defendants argue that "Plaintiffs' cause of action for fraud

12

fails because California law does not provide tort remedies for causes of action that sound in contract." Mot. at 10. In addition, Defendants argue that Plaintiffs have failed to allege the necessary elements for a fraud claim. Reply at 10.

The elements of fraudulent misrepresentation are (1) misrepresentation; (2) knowledge of the representation's falsity or tendency to mislead; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. Cal. Civ. Code §§ 1709-10; 5 Witkin, Summary of Law (9th ed. 1988 and 1999 supp.) Torts, § 676.

Contrary to Defendants' argument, Plaintiffs have sufficiently pled this claim. Defendants insist that Plaintiffs have not addressed "how the statements made by Defendants were false and misleading." Reply at 10 (emphasis in original). The statements were false, according to Plaintiffs' allegations, because Defendants did not intend to comply with the representations that they made. ¶ 67. Accordingly, the Court finds that Plaintiffs' claim satisfies the particularity requirement of Federal Rule of Civil Procedure 9(b).

Furthermore, Defendants' assertion that Plaintiffs are barred from even pleading contract claims together with tort claims when the claims arise out of the same facts is without merit. In the present case, at the very least, Plaintiffs' fraud claim and breach of contract claim can be read in the alternative. For this reason alone Plaintiffs have satisfied their burden of properly pleading a fraud claim.

Defendants' argument that "California law does not provide

13

tort remedies for causes of action that sound in contract" is hardly "well-settled law." Mot. at 10. To the contrary, as a recent decision from this district demonstrates, California law is far from settled on this issue. In City and County of San Francisco v. Cambridge Integrated Servs. Group, Inc., CV 04-1523, 2007 WL 1970092, at *1 (N.D. Cal. July 2, 2007), the court analyzed California case law dealing with tort and contract claims. The court stated:

> The court takes [the defendant's] point that these [California court] holdings seem to state a general rule that if damages for economic loss would be recoverable under a contract cause of action, a similar recovery in tort for the negligent performance of a services contract is probably prohibited. The court notes, however, that Eads[v. Marks, 39 Cal. 2d 807 (1952),] and North American Chemical[ Co. v. Superior Court, 59 Cal. App. 4th 764 (Ct. App. 1997),] . . . have not been formally overruled. Indeed, Erlich[v. Menezes, 21 Cal. 4th 543 (1999),] acknowledged . . . that the same wrongful act may at times constitute both a breach of contract and a tort.

Id. at *3.

Finally, Defendants' reliance on Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85 (1995), is misplaced. In Freeman, the California Supreme Court overruled a prior decision of its own and adopted a "general rule precluding tort recovery for noninsurance contract breach . . . ." Id. In the present case, it is far from clear whether a contract ever existed, much less whether there was a breach. Freeman is thus inapplicable to Defendants' Motion to Dismiss Plaintiffs' fraud claim.

For these reasons, Defendants' Motion to Dismiss this cause

of action is DENIED.

### 7. Negligent Misrepresentation (Fourth Cause of Action)

Defendants make the same argument for Plaintiffs' negligent misrepresentation claim as they made for Plaintiffs' fraud claim, arguing that claims based in contract cannot be converted into tort claims. For the reasons stated above, the Court finds this argument to be without merit.

Defendants also argue that Plaintiffs' claim for negligent misrepresentation is fatally flawed because it contains the assertion that "Defendants knowingly made false representations . . . ." Second Am. Compl. ¶ 71.

The elements for a cause of action for negligent representation are:

> (1) representation as to a material fact, (2) representation is untrue, (3) regardless of actual belief, the defendant made the representation without a reasonable ground for believing it true, (4) intent to induce reliance, (5) justifiable reliance by plaintiff who does not know the representation is false, and (6) damage.

Masters v. San Bernardino County Employees Ret. Ass'n, 32 Cal. App. 4th 30, 40 n. 6 (Ct. App. 1995).

Notwithstanding the fact that Plaintiffs' claim for negligent misrepresentation includes allegations that Defendants acted with knowledge, not negligence, the Court, at this stage, is disinclined to dismiss the cause of action. Plaintiffs have presented sufficient factual allegations to state a claim for negligent misrepresentation. Defendants' Motion to Dismiss this

15

cause of action is therefore DENIED.

### 8. Breach of Contract (First Cause of Action)

Defendants argue that Plaintiffs' breach of contract claim should be dismissed because the contract, the MoU, was in fact only an agreement to agree, and, as such, was not an enforceable contract.

Defendants, in support of this argument, point to language in the MoU stating that the MoU would terminate if a mutually acceptable Management Agreement was not executed within 14 days of the MoU. Mot. at 13. Defendants' argument is undercut by the chronology of the MoU's execution. The MoU went into effect June 27, 2005. Opp'n at 16. Defendants did not sign the MoU until August 15, 2005. Id. Not withstanding the language of the MoU, Defendants clearly intended for the MoU to still maintain some force, as they signed it more than 14 days after it was created.

Equally damaging to Defendants' argument is the fact that Defendants acted as if they were bound by the terms of the MoU from July 2005 through February 3, 2006. Id. Such actions indicate mutual consent and mutual intent to be bound by the terms of the MoU. See Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (Ct. App. 2006) (stating "[c]ontract formation requires mutual consent"); see also Alexander v. Codemasters Group Ltd., 104 Cal. App. 4th 129, 141 (Ct. App. 2002) (stating "[m]utual consent is determined under an objective standard applied to outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts . . ."). Although "[a]n agreement to make an agreement, without more, is not a

16

binding contract," Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 315 (9th Cir. 1996), the MoU appears to be more than such an agreement. "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed." Bustamante, 141 Cal. App. 4th at 208. Defendants' Motion to Dismiss this cause of action is therefore DENIED.

### 9. Claims Against Individual Employees of XOJet

Finally, Defendants argue that Plaintiffs' claims against the individuals Touw and Langmann should be dismissed because Touw and Langmann were acting within the scope of their employment at XOJet and cannot be held personally liable for the tortious acts of the company.[6] Touw is XOJet's President and CEO and Langmann is XOJet's Vice President of Strategic Air Planning and Mission Control. Opp'n at 2. Plaintiffs argue that the claims against Touw and Langmann are based on their individual participation in the wrongful acts and not on their status as directors or officers of XOJet. Opp'n at 14.

"Directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct." Frances T. v. Village Green Owners Ass'n, 42 Cal. 3d 490, 504 (Ct. App. 1986).

Although Touw and Langmann were acting on behalf of XOJet

---

[6] Touw and Langmann are included as Defendants in Plaintiffs' third cause of action for fraud, fourth cause of action for negligent misrepresentation, and seventh cause of action for violation of California's Business and Professional Code.

17

1  when they made the alleged misrepresentations, this does not, as
2  Defendants argue, automatically shield them from liability.
3  Plaintiffs allege that Touw and Langmann made fraudulent
4  representations.  In other words, Plaintiffs allege that Touw and
5  Langmann "participated in the tortious conduct."  Id.  This is all
6  that is required to state a claim against individual directors of
7  a corporation.  Defendants' Motion to Dismiss Defendants Touw and
8  Langmann is therefore DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss without leave to amend Plaintiffs' Fifth Cause of Action for conversion.  The Court DENIES Defendants' Motion to Dismiss all other Causes of Action.

IT IS SO ORDERED.

Dated: November 14, 2007

UNITED STATES DISTRICT JUDGE